# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ROSWELL, NEW MEXICO

APR 0 6 2023

MITCHELL R. ELFERS
CLERK OF COURT

| | |
|---|---|
| United States of America<br>v.<br>Kevin Dwight Clements<br>Karyn Estrada<br><br>*Defendant(s)* | Case No. 23-MJ-612 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  November 2018 - January 2020  in the county of  Eddy  in the
_____  District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1) | Sex Trafficking of Children (Clements) |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm (Clements) |
| 18 U.S.C. § 1591(a)(2) | Sex Trafficking of Children (Estrada) |

This criminal complaint is based on these facts:
See attached affadavit

☐ Continued on the attached sheet.

_____
Complainant's signature

Daniel Fondse, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/06/2023

_____
Judge's signature

City and state:  Roswell, New Mexico    The Honorable Magistrate Judge Barbara Evans
*Printed name and title*

# AFFIDAVIT

I, Daniel Fondse, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent with the FBI since May 2017. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest warrants. Prior to my employment by the FBI, I spent three years as a sworn law enforcement officer in the city of San Diego. I am currently assigned to the FBI's Albuquerque Division Child Exploitation and Human Trafficking Task Force, as such, I am authorized to investigate crimes involving the victimization of minors.

2. I have received training from other law enforcement officers in the investigation and enforcement of federal child pornography and exploitation laws in which electronic devices and electronic communication service providers are used as the means for producing, receiving, transmitting, possessing, and distributing images depicting minors engaged in sexually explicit conduct. I have also received training and gained experience in interview techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have previously participated in child exploitation investigations and search warrants.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses, including through written reports. Because this affidavit is submitted for the

limited purpose of securing a criminal complaint, your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only those facts that your affiant believes are necessary to establish that probable cause to support a criminal complaint against Kevin Dwight Clements, "Clements," for Sex Trafficking of Children, violation of 18 U.S.C. § 1591(a)(1), (b)(1), and being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), and Karyn Estrada, "Estrada," for Sex Trafficking of Children, violation of 18 U.S.C. § 1591(a)(2), (b)(1).

### RELEVANT STATUTES

4. Title 18 U.S.C. § 1591(a)(1) & (2) provides that " whoever knowingly, in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described [above], knowing, or . . .in reckless disregard of the fact . . . the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." Additionally, there is a heightened penalty under 18 U.S.C. § 1591(b)(1) if the minor is under 14.

5. Title 18 U.S.C. § 922(g)(1) makes it a federal crime for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

### DETAILS OF THE INVESTIGATION

6. In January of 2020, law enforcement in Eddy County, New Mexico, received information that an 11-year-old girl (hereinafter DOE 1) had recently disclosed to a family member

that she had been sexually assaulted on multiple occasions by Clements during 2018 and 2019. DOE 1 was referred for a forensic interview, which occurred on January 22, 2020. A detective with the Eddy County Sheriff's Department was present for the safehouse interview.

7. During the interview, DOE 1 described multiple instances of rape committed by Clements starting in approximately November of 2018. DOE 1 reported that the assaults occurred at Clements' residence. At the time, Clements resided at and operated the Ponderosa RV Park, located in Artesia, New Mexico.

8. DOE 1 reported the following incidents during her first safehouse interview:

    a. The first time DOE 1 was assaulted, Clements turned off all the lights and shoved DOE 1 into a bedroom. Clements proceeded to remove DOE 1's clothing and place his finger into DOE 1's vagina. Clements also hit DOE 1 in the body and face, causing bruising. As Clements was assaulting DOE 1, he told her that he was going to kill her.

    b. On the following weekend, Clements threw DOE 1 onto the floor of the same bedroom where the previous assault occurred. DOE 1 resisted and told Clements to stop. To stop DOE 1 from screaming, Clements put duct tape over DOE 1's mouth. DOE 1 described Clements proceeding to vaginally rape DOE 1, pausing to kick and hit her when she resisted. Clements also displayed a small black gun in front of DOE 1's face and threatened to kill her.

    c. Another incident took place at a public shopping venue. Clements became angry with DOE 1 and tied up her up with a rope he retrieved from the trunk of his car. Clements proceeded to put DOE 1 in the back seat, facing the floor, and covered

her with a blanket. Clements tied DOE 1's arms around her back and tied her legs together. Clements told DOE 1 that if she got out of the car, he would kill her.

    d. DOE 1 explained that the assaults continued until about May of 2019. At that time, DOE 1 told Clements that she was going to tell someone else about the assaults. In response, Clements got the same little black gun from under a pillow. DOE 1 stated that Clements was about to pull the trigger but was interrupted by the doorbell. When Clements went to answer the door, DOE 1 went to hide. The following day, DOE 1 ran away to a family member's house.

9. About one week after the previously described interview, DOE 1 informed law enforcement that she recalled additional details about Clements' assaults that she wanted to provide. DOE 1 sat for a second safehouse interview on January 28, 2020. Again, a detective with the Eddy County Sheriff's Department was present for the interview. In this interview, DOE 1 provided the following information:

    a. DOE 1 stated that each time she was raped, she observed Clements giving Estrada (an adult who had care or custody of DOE 1 during certain time periods) money the next day. Also, during the timeframe of the assaults, there were occasions when Estrada observed bruising on DOE 1, but she (Estrada) either looked the other way or did not ask what had happened. DOE 1 further stated that she (DOE 1) had screamed during the assaults, so it was likely Estrada (who was present at the residence where the assaults occurred) knew that Clements was assaulting DOE 1.

    b. DOE 1 also described the approximately fourth time Clements assaulted her. This assault occurred while DOE 1 was out of school for a holiday, most likely

Christmas. Clements put DOE 1 in the trunk of Clements's car and drove DOE 1 to a different building on his property in the middle of the Ponderosa RV Park. Clements used the building as a workshop. To get to the building, Clements placed DOE 1 inside the trunk of the car to prevent DOE 1 from running away. Once inside the building, DOE 1 was able to briefly escape. She ran around the building and hid under some boards inside. When Clements found her, he hit her with a board, leaving a bruise. Clements took DOE 1 to the other side of the building and took her clothes off. Clements then touched her vagina with his hands and later punched her in the stomach. After Clements hit DOE 1, she woke up and Clements was gone. DOE 1 returned to Clements' house and hid until Estrada returned home.

10. In approximately January of 2020, law enforcement interviewed Estrada regarding the allegations against Clements. Estrada denied any knowledge of Clements assaulting DOE 1. Estrada also said she didn't think Clements was permitted to have a gun. Estrada stated that she later learned that Clements did have a small gun, but she did not know if it was real. Estrada described the firearm as small and black. Estrada said Clements sometimes kept it under his pillow and carried it on his person.

11. In April of 2020, law enforcement interviewed an adult female, hereinafter "V1." V1 also described being raped by Clements. V1 was also interviewed by law enforcement twice in February of 2023. V1 stated that Clements owned a handgun and had threatened her with it. V1 described Clements as paranoid from illegal street drug use. V1 had seen Clements fire the small handgun. V1 said she feared for her safety, so she turned in

Clements' handgun to police in June of 2020.[1] The law enforcement agency which received the firearm provided the FBI with records indicating V1 gave them a small, black, Ruger LCP .380 caliber automatic pistol, with one round in the chamber and 5 rounds in the magazine. The firearm was later transferred to the FBI on January 19, 2023.

12. Also in approximately April of 2020, law enforcement interviewed Clements in connection with V1's allegations. In that interview, Clements denied possessing anything illegal in his house. Clements stated that any guns in his possession are imitation and not real. When asked if he was allowed to have guns, Clements replied that he is not because he has a felony bank robbery conviction on his record from years ago.

13. In approximately May of 2020, law enforcement interviewed a witness, hereinafter W1. W1 was also interviewed by law enforcement in February of 2023. W1 knew Clements well and spent time inside Clements' residence. Through these interviews, W1 provided the following information:

    a. W1 described a room in the building adjacent to Clements' residence where there was a mattress on the floor and foam on the walls. W1 stated that Clements referred to this room as the "torture room." W1 reported that inside one of the bedrooms in Clements' residence, W1 saw cameras and camera stands set up near the bed. W1 stated Clements had told him that Clements had filmed sex videos.

---

[1] Clements was charged by the State of New Mexico for this conduct. These charges were later dismissed. While the state case was pending, V1 was interviewed by Clements' attorney, and she recanted her original story. Based on my training and experience, this is a common occurrence with victims of rape, especially when they fear for their safety.

   b. W1 stated that Clements possessed a small, silver or chrome, handgun, which Clements kept on his person all the time. Clements had shot the pistol on the Ponderosa RV Park property. W1 provided a description of Clements' car, noting that it was a Dodge Stratus sedan. W1 also reported that Clements accepted sexual acts as partial payment from residents of his Ponderosa RV Park.

   c. W1 described a conversation with Clements where Clements told W1 that the police were investigating Clements over allegations he had raped another minor, hereinafter DOE 2, who resided at the Ponderosa RV Park. Clements told W1 he had never raped DOE 2 because she gave it up willingly.[2] Clements stated it was just like what happened with DOE 1. Clements also told W1 that Estrada had let Clements have sex with DOE 1. Clements added that DOE 1 looked like she was 20 years old.

14. In approximately January of 2023, DOE 1 participated in a third safehouse interview. In that interview, DOE 1 revealed the following information:

   a. On one occasion, Estrada watched Clements rape DOE 1. DOE 1 called out to Estrada for help, but Estrada just left the room instead. Before the rape, Estrada had told DOE 1 that something bad was going to happen to DOE 1.

   b. DOE 1 explained that during the abuse she described in previous interviews, Clements had kept a gun under his pillow, which caused DOE 1 to fear for her safety.

---

[2] In approximately February of 2023, DOE 2 participated in a safehouse interview. DOE 2 denied having sexual contact with Clements but described three incidents where Clements hugged DOE 2 from behind, and though still clothed, DOE 2 felt Clements' penis on her back. DOE 2 also stated that Clements twice offered to pay DOE 2 for sexual acts and that Clements attempted to have sex with DOE 2 and another minor at the same time.

7

    c. DOE 1 again stated that Clements paid Estrada each time Clements assaulted DOE 1. DOE 1 described the payment as two rolled-up bundles of money. While she did not know the exact amount, DOE 1 said the bundle contained $100 bills, $50 bills, and other bills. DOE 1 also described overhearing Clements and Estrada arguing in the kitchen over a price. Clements started the negotiation at $100 dollars. They eventually agreed on $500.

15. A records' check with the National Criminal Information Center (NCIC) showed Clements was arrested on June 22, 1999, on a charge of Armed Bank Robbery, a felony offense. He was subsequently convicted and sentenced to 100 months in custody plus 5 years of supervised release.

16. A check of the New Mexico Department of Motor Vehicles shows Clements was the registered owner a 2006 Dodge Stratus in 2020. Based on my training and experience, I know a Dodge Stratus is a vehicle with a trunk. Dodge is a company headquartered in Michigan. I do not know of any production motor vehicles manufactured in the state of New Mexico.

17. Title 18 U.S.C. § 1591(a)(1) requires that the defendant's conduct is "in or affecting interstate or foreign commerce." I believe this element is satisfied in the present case for the following reasons:

    a. DOE 1 described Estrada receiving payment in U.S. currency, which is itself a means of interstate commerce.

    b. DOE 1 also described being transported by Clements in the trunk of Clements' vehicle to a workshop during one of the assaults. Clements was the registered owner of a Dodge Stratus sedan, which W1 described as the vehicle Clements

8

typically used. This vehicle was not manufactured in New Mexico and affects interstate or foreign commerce.

    c. Additionally, Clements threatened DOE 1 with a firearm to facilitate the sexual assaults of DOE 1 when he paid money to Estrada. As will be discussed below, that firearm was not manufactured in New Mexico and thus affects interstate or foreign commerce.

18. Title 18 U.S.C. § 922(g)(1) requires that the defendant's firearm be "shipped or transported in interstate or foreign commerce." I believe that element is satisfied here because firearm turned into law enforcement that belonged to Clements is a Ruger .380 handgun. Based on my training and experience, Ruger (a brand of Sturm, Ruger & Company, Inc.) has production facilities located in Connecticut, New Hampshire, North Carolina, and Arizona. Ruger does not have any production facilities in New Mexico. Additionally, I do not know of any mass-produced firearms legally manufactured in New Mexico. Accordingly, Clements' firearm must have been shipped or transported in interstate or foreign commerce.

## Conclusion

19. Based on all of the above information, your affiant submits there is probable cause to believe that Karyn Estrada committed a violation of 18 U.S.C. § 1591(a)(2), (b)(1) - Sex Trafficking of Children and Kevin Dwight Clements committed violations of 18 U.S.C. § 1591(a)(1), (b)(1) - Sex Trafficking of Children and 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm.

20. Prosecution of Kevin Clements was approved by Assistant United States Attorney Matilda Villalobos.

_____
Daniel Fondse, Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 6th day of April, 2023.

_____
HONORABLE BARBARA EVANS
UNITED STATES MAGISTRATE JUDGE